MICHAEL F. SKOLNICK - #4671
mfskolnick@kippandchristian.com
JEREMY R. SPECKHALS - #16381
jspeckhals@kippandchristian.com
KIPP AND CHRISTIAN, P.C.
10 Exchange Place, Fourth Floor
Salt Lake City, Utah  84111
(801) 521-3773

LAURENCE BERMAN*
California Bar No. 93515
BERMAN LITIGATION GROUP
lberman@bermanlitigationgroup.com
815 Moraga Drive
Los Angeles, California  90049
(424) 465-9079

*Denotes counsel who will seek pro hac vice admission*

*Attorneys for Defendant David W. Quinto*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GEORGE HOFMANN, in his capacity as Chapter 11 Trustee of VIDANGEL, INC. a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID W. QUINTO, an individual, and KUPFERSTEIN MANUEL, LLP fka KUPFERSTEIN MANUEL & QUINTO, LLP, a California limited liability partnership,<br><br>    Defendants. | **DEFENDANT DAVID W. QUINTO'S MOTION TO DISMISS**<br><br>Case No. 2:20-cv-00284HCN<br>Judge Howard C. Nielson, Jr. |

David W. Quinto ("Mr. Quinto"), by and through counsel, hereby submits the following Motion to Dismiss.

## STATEMENT OF RELIEF SOUGHT

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), Mr. Quinto respectfully requests that this Court:

(1) Dismiss Plaintiff's Complaint based on the parties' binding agreement that Plaintiff's principal claims be resolved by binding arbitration in California, to be conducted under California law; or

(2) In the alternative, dismiss Plaintiff's Complaint because defendant Kupferstein Manuel, LLP is not subject to personal jurisdiction in Utah; and

(3) Award attorney fees and costs to Mr. Quinto, based upon his engagement agreement with Plaintiff.

This Motion is supported by the concurrently-filed Declarations of David W. Quinto dated May 14, 2020 and Phyllis Kupferstein dated May 10, 2020; all documents on file in this action; and such further evidence and argument as may be presented before or at any hearing on this Motion.

## INTRODUCTION

Plaintiff has alleged legal malpractice claims stemming from an opinion letter Mr. Quinto authored in 2015 ("2015 Opinion Letter"). Plaintiff alleges that the 2015 Opinion Letter led to the entry of an almost $63 million judgment against bankruptcy Chapter 11 debtor VidAngel, Inc. Then and at all times since, Mr. Quinto resided in Los Angeles, California. When he wrote the opinion letter, Mr. Quinto was a member of Kupferstein Manuel & Quinto, LLP ("KMQ"), the predecessor firm to defendant Kupferstein Manuel, LLP, whose sole offices have been in Los Angeles, California.

Mr. Quinto prepared the 2015 Opinion Letter pursuant to a September 2014 engagement letter ("2014 Engagement Letter") countersigned by VidAngel's CEO, Neal Harmon. The 2014 Engagement Letter formed a contract between KMQ and VidAngel, and binds VidAngel's Chapter 11 bankruptcy trustee, Plaintiff George Hofmann. It is for good reason that Plaintiff chose not to attach a copy of the 2014 Engagement Letter to his complaint, or even allege its terms. The 2014 Engagement Letter prohibited him from bringing this action, either in a court or in Utah.

The 2014 Engagement Letter addressed the possibility that disputes might later arise between the parties and provided that "any claim for breach of contract, professional negligence or breach of a fiduciary duty," or any other claim arising out of KMQ's representation of VidAngel or provision of legal services to VidAngel, would be resolved confidentially and exclusively under JAMS arbitration rules before three retired judges in Los Angeles County, California. It further provided that the arbitration would be decided under California law, and authorized the prevailing party to recover attorney fees and costs.

In alleging the parties' contract while ignoring its terms in improperly filing suit, the trustee has made public a baseless claim that Mr. Quinto committed legal malpractice. Because this Court cannot compel the parties to arbitrate in another state, and because the Court lacks personal jurisdiction over the law firm defendant, VidAngel's Complaint should be dismissed, with attorney fees and costs awarded to Mr. Quinto.

## STATEMENT OF FACTS

**A. Both Defendants Are Citizens of California Who Reside in Los Angeles.**

1.  Phyllis Kupferstein, the sole member of defendant Kupferstein Manuel, LLP ("KM"), has been a citizen of California continuously since 1959, and a resident of Los Angeles

County for that period as well. Declaration of Phyllis Kupferstein dated May 10, 2020 ("Kupferstein Dec."), ¶ 2, attached hereto as Exhibit "1."

2. Defendant David Quinto has been a citizen of California continuously since 1982, and a resident of Los Angeles County for that period as well. Declaration of David W. Quinto dated May 14, 2020 ("Quinto Dec."), ¶¶ 2-4, attached hereto as Exhibit "2."

3. In January 1986, Ms. Kupferstein and Mr. Quinto were two of the four lawyers who founded the firm known today as Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"). *Id.*, ¶ 6.

4. In March 2014, Mr. Quinto was persuaded by Ms. Kupferstein to leave Quinn Emanuel, which by then had become a large, multi-national law firm, and return to small firm practice by joining her in founding a new firm. Their firm, KMQ, had just two members—Ms. Kupferstein and Mr. Quinto—and was the predecessor firm to the defendant KM firm. *Id.*, ¶ 7.

**B. Real-Party-In Interest VidAngel Contacted Mr. Quinto in California and Entered into a Retainer Agreement in Which the Parties Agreed that Any Dispute Would Be Resolved by Binding, Confidential Arbitration in Los Angeles, California Using California Law.**

5. In September 2014, while he was practicing with KMQ, Mr. Quinto was called by Mr. Harmon, the CEO of real-party-in-interest VidAngel, Inc, a Provo, Utah based start-up. During that conversation, Mr. Harmon asked whether Mr. Quinto would be willing to prepare an opinion letter addressing the legality of a service that would allow consumers to "filter" content streamed to them. By "filter," Mr. Harmon explained that he meant muting words or skipping scenes or images at a consumer's direction. The opinion letter was to be used to persuade Apple to approve VidAngel's app for inclusion in its app store. *Id.*, ¶ 8.

6. When Mr. Harmon asked to retain his services, Mr. Quinto asked that VidAngel enter into a written retainer agreement ("2014 Engagement Letter"). Mr. Harmon and Mr. Quinto

4

executed the 2014 Engagement Letter on September 26, 2014.  *See* 2014 Engagement Letter, a true and correct copy of which is attached to the Quinto Declaration as Exhibit "A.").

7. In its first paragraph, the 2014 Engagement Letter described the limited scope of the engagement:

> [W]e are to work with Joseph M. Shapiro to prepare an opinion letter to be directed to you.  We understand that the letter will be shared with Apple for the purpose of persuading Apple to allow VidAngel to create an iPhone app.  The letter will analyze selected legal issues that could arise under the copyright laws . . . .  You have instructed us that the opinion letter should not be comprehensive but should address only questions or concerns that Apple might raise.

*See id.*

8. The 2014 Engagement Letter also addressed the resolution of disputes such as the one raised by the trustee herein:

> **Arbitration**
>
> Although we think it is unlikely, it is possible that a dispute may arise between us regarding some aspect of the Engagement and our representation of you.  If the dispute cannot be resolved amicably through informal discussions, we believe that most, if not all, disputes can be resolved more expeditiously and with less expense by binding arbitration than in court.  This provision will explain under what circumstances such disputes shall be subject to binding arbitration.
>
> **CALIFORNIA AGREEMENT TO ARBITRATE**
>
> (a) Any dispute between KMQ and VidAngel as to attorneys' fees and/or costs in connection with the Engagement shall be resolved as follows:
>
> 1. If any such fee and/or cost dispute arises, KMQ shall provide VidAngel with written notice of VidAngel's right to arbitrate under the California State Bar Act (Bus. & Prof. Code § 6200, et seq.).  Those procedures permit a trial after arbitration, unless the parties agree in writing, after the dispute has arisen, to be bound by the arbitration award.

> 2. If VidAngel exercises its rights under the California State Bar Act, VidAngel and KMQ may thereafter agree that the arbitration will be binding.
>
> 3. If VidAngel exercises its rights under the California State Bar Act, and VidAngel and KMQ do not agree that the arbitration is binding, then VidAngel and KMQ agree that the dispute will be subject to mandatory arbitration as described in ¶ (b) below.
>
> 4. If, after receiving notice of its right to arbitrate, VidAngel does not exercise its rights under the California State Bar Act by filing a request for fee arbitration within 30 days, VidAngel and KMQ agree that the dispute will be subject to mandatory arbitration as described in ¶ (b) below.
>
> Any other dispute arising under the Engagement or in connection with the provision of legal services by KMQ including, without limitation, any claim for breach of contract, professional negligence or breach of a fiduciary duty, **shall be resolved by confidential, binding arbitration** as described in ¶ (b) below. (Emphasis added.)

*See id.* at pp. 6-7.

9. Paragraph (b), headed "ARBITRATION PROCEDURES," provided that any arbitration would be conducted by a panel of three retired judges sitting as Judicial Arbitration and Mediation Service ("JAMS") arbitrators, would "[t]ake place in the city in the United States where the KMQ attorneys who spent the most time on the Engagement are located," and would "[a]pply the laws of the jurisdiction in the United States where the applicable city is located." In other words, any arbitration would have to be in Los Angeles and under California law. Finally, pursuant to the same paragraph, the prevailing party in any "proceeding to enforce any provision of this agreement will be awarded attorneys' fees and costs," including the value of the KMQ attorneys' own time. *See id.* at p. 7.

### C. While in California, Mr. Quinto Provided Legal Services to VidAngel.

10. After Mr. Harmon signed the 2014 Engagement Letter requiring that any disputes arising out of Mr. Quinto's services be resolved by confidential, binding arbitration in Los Angeles under California law, Mr. Quinto provided advice concerning copyright law, authored an opinion letter that VidAngel had requested for the limited purpose of persuading Apple to approve its app (*see* 2015 Opinion Letter, a true and correct copy of which is attached to the Quinto Declaration as Exhibit "B"), and drafted a single letter sent to multiple motion picture studios and television networks to put them on notice of VidAngel's service and technology.  Quinto Dec., ¶ 9.

11. On February 25, 2015, Mr. Quinto delivered the 2015 Opinion Letter, which forms the basis of Plaintiff's complaint.  *See* Exh. B to the Quinto Dec.; Cmplnt., ¶¶ 3, 4, 12, 13, 16, 19-26, 40-44, 54, 60 and 66-71, attached hereto as Exhibit "3."

12. After being retained in September of 2014 and until July 2016, Mr. Quinto never visited Utah, and the KMQ firm had no other client in Utah.  *Id*., ¶ 7; Kupferstein Dec., ¶ 3.  Moreover, the KM firm has never had a client in Utah.  Kupferstein Dec., ¶ 3.

13. In August 2015, Mr. Quinto resigned from his membership in KMQ to join the Los Angeles office of Davis Wright Tremaine, LLP ("DWT").  Because DWT had a business conflict, Mr. Quinto was required to terminate his representation of VidAngel the same month.  Quinto Dec., ¶ 10.

14. Anticipating that Disney would sue it, VidAngel retained the Baker Marquart firm in Los Angeles to defend it when that happened, and to address questions of copyright law raised by VidAngel's board members and potential investors in the interim.  Disney, joined by Fox and Warner Bros., filed suit against VidAngel in Los Angeles, California on June 9, 2016 (the "Disney Litigation").  *Id.*, ¶ 11.

15. After VidAngel was sued, Mr. Harmon reached out to Mr. Quinto seeking to find any way that would permit Mr. Quinto to participate in defending VidAngel. *Id*., ¶ 13. They agreed that Mr. Quinto would resign from DWT to become VidAngel's general counsel. They further agreed that Mr. Quinto would be literally "in house," in that he would work from his home in Los Angeles, would not seek admission to the Utah bar, and would spend a substantial amount of time supervising the Disney litigation. Mr. Quinto also prepared contracts, and advised VidAngel as to federal, but not Utah, law. *Id*., ¶ 14.

16. On July 21, 2016, VidAngel's CEO Neal Harmon sent Mr. Quinto an Offer of Employment letter, which was subsequently signed and accepted by Mr. Quinto. (*See* Offer of Employment Letter, a true and correct copy of which is attached to the Quinto Declaration as Exhibit "D").

17. The Offer of Employment Letter included an Exhibit "A," entitled "Inventions Agreement," which stated: "This Agreement will be governed by the laws of the state of the Company's headquarters without regard for conflict of law principals." The Agreement also provides for exclusive jurisdiction over Mr. Quinto in the same state, "for any lawsuit filed there against me **arising from or related to this Agreement.**" *Id.*, *emphasis added.*

18. Mr. Quinto worked for VidAngel from California until his employment was terminated by VidAngel's Chapter 11 trustee on November 11, 2019. Mr. Quinto was always domiciled in California. Although Mr. Quinto did visit Utah three or four times a year for business while he was employed by VidAngel, it has now been a year and a half since Mr. Quinto last visited Utah. *Id*., ¶ 15.

**D. Plaintiff Has Alleged that Mr. Quinto's 2015 Opinion Letter Is Responsible for the Entry of an Almost $63 Million Judgment Against VidAngel.**

19.     Plaintiff's Complaint herein alleges that Mr. Quinto provided the 2015 Opinion Letter to Plaintiff, "analyzing potential copyright and other issues related to the proposed VidAngel technology."  Cmplnt., Exhibit "3," ¶ 21.  Plaintiff further alleges that VidAngel relied on the 2015 Opinion Letter in that it implemented the proposed technology discussed in it (*Id.* ¶ 23), relied on the 2015 Opinion Letter in defending itself against the claims brought by Disney, Fox, and Warner Bros. (*Id.* ¶¶ 40-44), and suffered a substantial detriment as a consequence of doing so.  *Id.* ¶¶ 27-34.

20.     Plaintiff's allegations of legal malpractice with respect to the 2015 Opinion Letter, and acts or omissions during Mr. Quinto's employment pursuant to the 2016 Offer of Employment Letter are interwoven in the following paragraphs of the Complaint: 3, 4, 12-13, 16, 54, 19-26, 40-44, 66-70 (the Breach of Contract claim) and 71-77 (the Breach of Implied Covenant claim).  *See* Ex. "3."  They are also incorporated by reference into every claim in paragraphs 54, 60, 66 and 71.  *See id.*

## ARGUMENT

**I.     THE PARTIES' MANDATORY CALIFORNIA ARBITRATION AGREEMENT REQUIRES DISMISSAL**

The parties' dispute is subject to an agreement providing for mandatory arbitration by JAMS in California.  A court is required to "interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration." *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 798 (10th Cir. 1995) (*citing Moses H. Cone Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24–25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983)).  There is a "strong policy strongly favoring arbitration." *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 260-61 (6th Cir. 2010).

An agreement to arbitrate is controlling: "As Plaintiff's claims arise under the express terms of the parties' contract, Defendant is entitled to compel arbitration." *Multiband Corp. v. Block*, No. 11-15006, 2012 WL 1843261, at *7 (E.D. Mich. May 21, 2012) (unpublished).

The trustee cannot avoid the arbitration agreement. "The trustee is bound by the arbitration agreements the debtor formed before it petitioned for bankruptcy protection." *Strong v. Geringer*, No. 2:15-CV-00837-TC, 2016 WL 4926175, at *4 (D. Utah Sept. 15, 2016) (unpublished) (citing *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 885 F.2d 1149, 1153 (3d Cir. 1989)).

Construing the Federal Arbitration Act (Pub. L. 68-401, 43 Stat. 883), codified at 9 U.S.C. ch. 1, the Tenth Circuit has held that if a party initiates a lawsuit in one state when arbitration in another is required, a district court is without power to compel arbitration in another. If the parties have "agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration . . . ." *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005); *see also id.* (citing cases). In other words, "a district court lacks the authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,* 49 F.3d 323, 328 (7th Cir. 1995).

VidAngel consented to arbitration of any dispute arising under the engagement, or in connection with the provision of legal services by KMQ. Because this Court lacks the power to compel arbitration of such claims, it must dismiss this action.

## II. DEFENDANT KUPFERSTEIN MANUEL, LLP IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS DISTRICT.

"To obtain personal jurisdiction over a nonresident in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *See Far W. Capital, Inc., v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (emphasis in original); *see also Nevins*

*v. McKinley Capital. Mgmt*, 1999 WL 815810, at *1 (10th Cir. Oct. 13 1999) ("On a motion to dismiss for lack of personal jurisdiction, the plaintiff must show that the district court has power over each foreign defendant under the state's long-arm statute and that exercise of such jurisdiction is consistent with due process limitations."). "In Utah, jurisdiction is appropriate only if [the] plaintiff establishes that: (1) the defendant conducted certain enumerated activities in Utah, and (2) there is a nexus between [the] plaintiff's claim and [the] defendant's conduct." *Far W. Capital*, 46 F.3d at 1074; *see also* Utah Code Ann. § 78B-3-305 (setting forth the acts that submit a person to jurisdiction in Utah).

"The [p]laintiff bears the burden of establishing personal jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quotation simplified); *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (stating that "[t]he plaintiff bears the burden of establishing personal jurisdiction").

The Utah Supreme Court has explained that "any set of circumstances that satisfies due process will also satisfy [Utah's] long-arm statute." *SII MegaDiamond, Inc. v. Am. Superbrasives Corp.*, 969 P.2d 430, 433 (Utah 1998); *see also* Utah Code Ann. § 78B-3-201 (stating that Utah law "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution"). "This collapses the Utah standard into the more general 'due process' standard for jurisdiction." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

A defendant may be subject either to general or to specific jurisdiction. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State as so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations,*

*S.A. v. Brown*, 564 U.S. 915, 919 (2011).  For a corporation, "the place of incorporation and the principal place of business are paradigm bases for general jurisdiction."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation simplified).  General jurisdiction pertains to "instances in which the continuous corporate operations within a state are so substantial and of such a nature as to justify suit on causes of action arising from dealings entirely distinct from those activities."  *Int'l Shoe Co v. Washington*, 326 U.S. 310, 318 (1945). "The court. . . has general jurisdiction [only] over an individual domiciled in the state."  *Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 982 (D. Utah 2018)

  The exercise of specific jurisdiction over either a business or an individual requires that the suit arise out of the defendant's contacts with the forum.  *See Daimler*, 571 U.S. at 127.  Specific jurisdiction "exists only when the suit relates to the defendant's contacts *with the forum state.*" *Rockwood Select Asset Fund XI(6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179 (10th Cir. 2014) (emphasis added) (*citing Rambo v. Am. S. Ins. Co.,* 839 F.2d 1415, 1418 (10th Cir. 1988)).  Specific jurisdiction requires that the defendant have purposefully availed himself of "the privilege of conducting business in the forum state."  *Id.* at 1179 (*citing Dudnikov v. Chalk & Vermillion Fine Arts, Inc.,* 514 F.3d 1063, 1071 (10th Cir. 2008)).  The burden is on the plaintiff to make that showing.  *Id.*  at 1179 (*citing Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir. 1999)).

  Here, the Chapter 11 Trustee cannot meet his burden to show that sufficient "minimum contacts" exist with all defendants under either general or specific jurisdiction. *See Int'l Shoe*, 326 U.S. at 316.  The KM firm, whose only place of business operations is in California and which is organized and exists as a California Limited Liability Partnership, is clearly not subject to general jurisdiction in Utah.  Nor was Mr. Quinto, a California citizen and resident, "at home" in Utah

during the timeframe when he and KMQ were retained by VidAngel, and during which he authored the 2015 Opinion Letter.  Specific jurisdiction is also absent as to both defendants with respect to Mr. Quinto's preparation of the 2015 Opinion Letter, because those services were performed in California without ever visiting Utah, were not targeted at the State of Utah, and were performed without enjoying the benefits and protections of Utah's laws.

For purposes of this motion, Mr. Quinto does not dispute that he is subject to specific jurisdiction in Utah for acts he allegedly committed between August 1, 2016 and November 11, 2019.  He is otherwise not subject to general or specific jurisdiction in Utah.

### A. Under Clear Supreme Court Precedents, the KM Firm Is Subject to Personal Jurisdiction Only in California.

A state may not exercise specific jurisdiction over an out-of-state defendant unless the suit arises from or relates to the defendant's contacts with the forum.  *See Daimler*, 571 U.S. at 127.  Indeed, absent "such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395, 404 (2017).  When the "relevant conduct occurred entirely" in another state, "the mere fact that this conduct affected plaintiffs with connections to the forum state [does] not suffice to authorize jurisdiction." *Id.* (quotation simplified).

Plaintiff cannot show that KM purposefully availed itself of the privilege of conducting business in Utah. The KMQ firm, which existed while Mr. Quinto wrote the 2015 Opinion Letter giving rise to this suit, had *no* contact with Utah.  It therefore cannot be subject to specific jurisdiction in Utah. It is irrelevant that VidAngel is in Provo, because the exercise of specific jurisdiction requires that KMQ's conduct have been targeted *at* the state of Utah rather than at a business located *in* the state of Utah.

VidAngel's presence in Utah is irrelevant to that analysis. "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). The jurisdictional analysis cannot be driven by "a plaintiff's contacts with the defendant and forum." *Id*. at 289, 134 S. Ct. at 1125. *See also Ron v. Zavasanos,* No. 2:19-cv-00979-DAK, 2020 WL 1862840, at *5 (D. Utah Apr. 14, 2020) (unpublished) ("Defendants further argue that under *Walden*, their alleged fraudulent omissions and their agreeing to continue representing Suzanne after moving to Utah are insufficient to establish personal jurisdiction over Defendants because those actions were directed at the Plaintiffs, not Utah. The court agrees . . ..").

In *Rockwood Select Asset Fund*, the plaintiff, a Utah company doing business in Utah, directed the out-of-state defendant to send an opinion letter to it in Utah after the defendant had communicated by telephone with the plaintiff in Utah. "These connections [we]re insufficient for personal jurisdiction in Utah." 750 F.3d at 1180; *see also* (*Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533-34 (10th Cir. 1996) (Colorado law firm held not subject to jurisdiction in Michigan after sending opinion letter that went to a lender in Michigan)).

And inasmuch as its successor, the KM firm, has had no contact with Utah, it too cannot be subject to general jurisdiction in Utah. Kupferstein Dec., ¶¶ 3 and 4.

Because Plaintiff's suit cannot proceed in Utah against all of the present defendants unless *all* defendants are subject to jurisdiction in Utah, Plaintiff's suit is barred. *See Nevins*, 198 F.2d 258 (citing *Far W. Capital*, 46 F.3d 1071).

### B. The Court Also Lacks Specific Jurisdiction Over Mr. Quinto with Respect to Work he Performed on the 2015 Opinion Letter.

A court "has general jurisdiction [only] over an individual domiciled in the state." *Celtig*, 347 F. Supp. 3d at 982. Here, though, Mr. Quinto was domiciled in Los Angeles County at all relevant times. Accordingly, he can be subject to jurisdiction in Utah only to the extent Utah may exercise specific personal jurisdiction. And as explained above, specific jurisdiction requires that the defendant have purposefully availed himself of "the privilege of conducting business in the forum state." *Rockwood Select Asset Fund*, 750 F.3d at 1179 (*citing Dudnikov v. Chalk & Vermillion Fine Arts, Inc.,* 514 F.3d 1063, 1071 (10th Cir. 2008)).

The gravamen of Plaintiff's complaint is that while he was in private practice in Los Angeles in February 2015, Mr. Quinto signed an opinion letter that offered advice, VidAngel relied on that advice, and, beginning in December 2016, VidAngel allegedly suffered detriment. What matters, though, is that Mr. Quinto performed his work on the 2015 Opinion Letter entirely within the state of California, first going to Utah to visit VidAngel a year and a half later. Mr. Quinto did not direct his activities at the state of Utah, nor did he enjoy the benefits and protections of Utah law while performing his services.

Plaintiff may argue that Mr. Quinto became subject to jurisdiction in Utah by virtue of the 2016 Offer of Employment Letter that Mr. Quinto accepted. That argument does not apply to the work he performed on the 2015 Opinion Letter a year and a half earlier. The 2016 Offer of Employment Letter did not have retroactive effect. It applied only prospectively. Again, it is insufficient for the assertion of personal jurisdiction that one's business has contacts with Utah; the individual, himself, must have sufficient contacts to make the assertion of jurisdiction permissible. *See Celtig,* 347 F. Supp. 3d at 983 ("Edwards did not do business in Utah in his personal capacity and his role as CEO of a company doing business in the state of Utah is

insufficient to subject him to personal jurisdiction in Utah."). Because Quinto did nothing to avail himself of personal jurisdiction during the timeframe he worked on the 2015 Opinion Letter, and because KMQ has never done anything to avail itself of personal jurisdiction in Utah, Plaintiff's complaint must be dismissed in its current form.

### III. THE COURT SHOULD AWARD ATTORNEY FEES AND COSTS PURSUANT TO THE TERMS OF THE RETAINER LETTER.

The 2015 Opinion Letter provides:

> [T]he prevailing party in any arbitration, action or proceeding to enforce any provision of this agreement will be awarded attorney's fees and costs incurred in that arbitration, action, or proceeding even if the law provides otherwise, including, without limitation, the value of the time spent by KMQ attorneys to prosecute or defend such arbitration, action or proceeding (calculated at the hourly rate(s) then normally charged by KMQ to clients which it represents on an hourly basis), except that the foregoing shall not apply to any mediation, as described above, and the parties will split the fees of the arbitrator . . . .

Plaintiff necessitated Mr. Quinto's Motion to Dismiss by publicly filing an action in Utah, when such action was clearly prohibited by the express terms of the retainer letter. Accordingly, Mr. Quinto should be awarded all attorney fees and costs incurred in this case, as provided in the parties' retainer letter.

### CONCLUSION

For the reasons set forth above, Plaintiff's complaint should be dismissed, and Mr. Quinto should be awarded his attorney fees and costs incurred in defending this case.

DATED this 26th day of May, 2020.

KIPP AND CHRISTIAN, P.C.

*/s/Michael F. Skolnick*
MICHAEL F. SKOLNICK
JEREMY R. SPECKHALS
*Attorneys for Defendant David W. Quinto*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May, 2020, I served the foregoing **DEFENDANT DAVID W. QUINTO'S MOTION TO DISMISS** on the following via ECF as follows:

> James E. Magleby
> magleby@mcg.law
> Jennifer Fraser Parrish
> parrish@mcg.law
> Mark P. Arrington
> arrington@mcg.law

>> */s/ Nancy Paez*

>> _____
>> Nancy Paez